So, we are back in session. Welcome again to the Ninth Circuit. We welcome Judge Thunheim from Minnesota. We are very happy that he continues to sit on our court. It makes things so much easier for us. We have a long calendar today. We have seven more cases on the calendar. We shall take them in the order in which they are on the calendar. At some point we will see how things go, but at some point we will take a break. I am not sure yet when that will be, but I will consult with my colleagues. So, we have as the first case, we are now going to be taking up Cotham v. Shinn. Counsel, whenever you are ready. Thank you. Good morning and may it please the Court. I am Brent Newton. I represent three of the arguments made in my briefs. First, no deference is due to the Arizona Court of Appeals' decision on direct appeal under 28 U.S.C. § 2254 D.1 in view of that court's failure to apply the serious and obstructionist misconduct standard. Second, and alternatively, no deference is due to the Arizona Court of Appeals' decision on Cotham's direct appeal under § 2254 D.1 and D.2 in view of that court's failure even to address whether Cotham's asserted reasons for being late to court, his debilitating back pain, untreated by medical staff, and a jailer's assurance that he would get Cotham to court on time, precluded revocation by the trial court of Cotham's fundamental constitutional right to represent himself. And third, no deference is due to the Arizona Court of Appeals' decision on post-conviction review under § 2254 D.1 in view of that court's finding no abuse of discretion when the state trial court clearly had misapplied U.S. Supreme Court precedent on the standard governing effective assistance of direct appeal counsel. Regarding the Feretta claim raised by Cotham, as this Court held in 1989 in the United States v. Fluitt in discussing the meaning of footnote 46 in Feretta, only a pro se defendant's deliberate, serious, and obstructionist misconduct during judicial proceedings in the courtroom warrant revocation of the defendant's fundamental constitutional right to represent himself. What Supreme Court case says that? I'm sorry. I have Feretta says that. Is there a follow-on Supreme Court case that deals with that question? No, Your Honor, but this Court in Fluitt interpreted that footnote definitively to say what I just said. I'm sorry. Go ahead and finish answering. Go ahead. So there is no subsequent Supreme Court case that addressed that issue, but this Court's 1989 decision interpreted footnote 46 in that way. What about the McCaskill case in the Supreme Court where the Court said in describing Feretta, the Court held that an accused has a Sixth Amendment right to conduct his own defense, provided only that he knowingly and intelligently forgoes his right to counsel and that he is able and willing to abide by the rules of procedure and courtroom protocol? Well, that is dicta to begin with. McCaskill was a case not about revocation. McCaskill was a case about standby counsel. More importantly, in Fluitt, that had already been decided. It was that actual language was mentioned by the dissent in Fluitt. It was not obviously something the majority felt bound by. That's precedent that governs this case. But hasn't the Supreme Court told us that we need to look at what the Supreme Court has stated in deciding whether we defer to the state courts? That's correct, but both the Supreme Court and this Court have held, although you cannot look to Ninth Circuit precedent as providing the authority, what you can do and should do is look to prior Ninth Circuit precedent discussing what the meaning of prior Supreme Court precedent is. So Fluitt is very much a relevant decision, not because it holds something independently, but instead because it says what the Supreme Court previously held. So the Supreme Court's law, in your view, is so clear that no reasonable jurist could have found that your client wasn't behaving in such a way to stop the trial court from ending his self-representation. No reasonable jurist could find that. That is correct. But let me turn to my second issue, which can moot this discussion. What we do know for sure is that any sort of misconduct or failure to follow the rules or whatever it may be, it has to be, surely, be volitional, be deliberate. They use the word deliberate in FRERETA. What we have in this case is a — where the record shows a defendant was in a wheelchair. He repeatedly used the wheelchair. He clearly had a medical issue. He comes to court late. The judge says, didn't I warn you, you could not refuse transport. He then gives an extended explanation, Mr. Cotham did, about, A, his back problems, the fact he uses a wheelchair. The district court, or the trial court in this case, did not dispute that. In fact, the trial court said in revoking him, quote, whatever issue it is you were having with your back. That's on page 112 of the excerpts of record, that he was still going to revoke him. That cannot be.  That's probably because 15 — 45 minutes later, he did get up and come. I'm sorry. I'm sorry. He obviously was able to get out of bed. He did get out of bed. He did. Every day. So it seems to the district court, essentially, was saying, well, okay, your back is hurting you, but you should have been able to get out of bed. Well, but Mr. Cotham's explanation was not just, my back hurts me. His explanation was, he was denied medication by the jail staff, asked for it. They didn't have a doctor. For several days, he went without medication. He said when he didn't have medication, it was excruciatingly painful to get out of  Is the trial court required to accept that explanation? This is what the trial court was required to do. We have a well-established Supreme Court precedent going back decades that says courts indulge in a presumption against waiver of a fundamental constitutional right. Ferretta itself refers to the right of self-representation as fundamental. So when a defendant makes a statement like that, that is certainly consistent with the record, i.e., his using a wheelchair, the trial court had an obligation to conduct some sort of meaningful fact-finding. Well, but the trial court, I'm looking at page 114, and the trial court said, I'm not going to find that your explanation has merit at this point. Correct. Isn't that a finding? No, that's a ruling of law. People don't, judges don't say, I don't find merit in your argument when they're talking about credibility. I'm not sure why that would be so, given the facts that Judge Gridan talked about, that he had been getting out of bed, he had been given this warning, he came in a few hours later, the judge got to observe him. I just don't see the district, the trial court simply saying, I'm making a finding of law here. Well, he certainly did not make a finding of fact in the trial court proceeding. But ultimately, the decision is whether he refused transport or not, and isn't that a factual question? Well, the decision is whether he refused transport for a valid reason. If a person has debilitating back pain, and this is what Mr. Coughlin described at length, and there was nothing to rebut this in the record, the court, in view of the fact courts indulge in a presumption against waiver, the trial court had an obligation to do more than just say, I don't believe you, especially when the surrounding facts, the wheelchair use, indicated he did have a problem. He said, it takes me long. But it cuts the other way, because the wheelchair use demonstrates that with the wheelchair, he was able to come to court, and he did. If you're able to get out of bed and get into a wheelchair. Right. With debilitating back pain, without any medical assistance, and without medication, it may take a person. I mean, the day before, he had the same problem. Well, but back pain comes and goes. And that's what Mr. Coughlin specifically explained. Mr. Coughlin specifically said, this thing sometimes comes and goes. It was really, really, really painful. It was debilitating. I couldn't get it. It took me a long time to get out at all. That was never explored. The district court never did any kind of fact finding. So you think this is an unreasonable fact finding? I think it's an unreasonable fact finding under 2254d2. I think it's an unreasonable matter of law in view of the Fluitt's decision, discussion of what serious obstructionist behavior means. So it's both. It's both of those things. There also is a third issue, which is, at the very least, there is an unreasonable decision by the Arizona Court of Appeals about whether this should have been raised on direct appeal. Now, keep in mind, when a court is on direct appeal in State court, you don't ask the questions that you've just been asking in terms of whether this is a, there's binding Supreme Court precedent. You are simply deciding whether there's a reasonable probability that Arizona Court of Appeals would have decided this differently had it had a merits brief and a true adversarial testing, as opposed to the recently certified question. I am. I am. Because at the very least, he gets a new direct appeal, because we have shown there is a reasonable probability, which is less than a preponderance. And that's not what the State court, the trial judge.   But on that issue, the, there's California, there's Arizona Court of Appeals and Supreme Court law that seems to say clearly that violation of rules is, or adherence to rules is a basis for evoking threat of rights. So, just a minute. Well, but built into that is that it was volitional, that it was deliberate. And that gets to my point, which is, had this been raised, the district judge jumped the gun, the district judge should have conducted some sort of meaningful factual inquiry. I thought we were talking about the appeal now. We are. But that is what I would have argued in a direct appeal brief. I would have argued everything I argued to this Court without the AEDPA deference requirement. Is there a reasonable probability had, for instance, Fluitt been decided that the Court of Appeals would have sent it back? I think there is. So, in other words, your appellate argument is not based on the difference in the standards, but on the facts. Correct. It's primarily based on the facts. On the standards, it didn't seem that the lawyer could have made the argument that the rules violation didn't count, because under Arizona's interpretation of the Supreme Court law, it does, whether right or wrong, right? I think Arizona's interpretation of it, though, has not been. This issue was an issue of first impression. And we cannot say that binding Arizona precedent would have helped. But what issue was an issue of first impression? A defendant who comes into court and says, I showed up late. Well, I understand that. But that's what you're relying on. You're not relying on the fact that the he could have argued that the rules violation, assuming there was one, didn't count for FORETA revocation purposes. That would have been argued as well. That's a whole separate issue. But that's what I'm saying there's clear law in Arizona about, so it would have been a futile argument. I don't know that it would have been a futile argument based upon the fact that it wasn't deliberate, which I guess bleeds into the factual issue.  All right. Thank you, counsel. Thank you. Good morning, Your Honors, and may it please the Court. My name is Jeff Sparks. I'm with the Arizona Attorney General's Office here on behalf of the Respondents Appellees. I'll start with Claim 1, the FORETA claim, turning first to the legal question, the D1 aspect of the claim. FORETA v. California is the clearly established federal law that applies here for AEDPA purposes. And I want to make it clear that the holding of FORETA, which is what is relevant for the timely and unequivocal request to self-represent. That's not at issue here. The question was the trial judge's revocation of that right. Now, FORETA does include the footnote that has been the subject of discussion here about serious and obstructionist misconduct. What the Court said in FORETA was that a trial judge may revoke a defendant's right to self-representation for that kind of conduct. It wasn't purporting to state an exclusive list of the situations where the right may be revoked. I think that's relevant here because, again, we're under AEDPA, so clearly established federal law is the holdings, and nothing about the Arizona Court of Appeals decision on the merits of this claim was inconsistent with the holding of FORETA. Isn't it clear that the Court did not use a serious and disruptive conduct standard? The Court of Appeals did not state that standard true. However, even if that were the clearly established federal law standard for AEDPA purposes, simply the fact that the state court didn't state that standard doesn't mean, as a matter of fact, that that was a violation of AEDPA or that it was contrary or an unreasonable application of that standard. It could still be consistent with it. And the warden's position here is that the, am I right, that the Supreme Court has never laid out the precise parameters of when you're on one side of the line and when you're on the other? That's exactly correct, Your Honor. And under AEDPA principles that the Supreme Court has discussed in other cases, when there is a very broad standard like we have here and a lack of specific guidance for when this right can be revoked, then a reviewing court under AEDPA is required to apply a considerable amount of deference to the state court's decision. Are there other courts that have used the FORETA decision to essentially find a procedural violation to be in violation of clearly established U.S. Supreme Court law? The only decision that I'm aware of doing that would be this Court's Fluid decision. But Fluid was reviewing a Federal court decision, correct? That's correct. That's correct. Right. And I think Fluid is of very limited relevance in this situation, first because Fluid is not interpreting the actual holding of FORETA. So as far as AEDPA goes, it's of minimal value in the analysis here. And even that being the case, I think Fluid, for the reasons we've stated in our brief, is distinguishable. The Court specifically stated that there was no indication that the defendants had violated any court rules or anything like that. It was simply that they hadn't prepared for trial, which is not the case here. So turning to the factual issue under the D2 portion of the statute, this was a credibility determination by the trial court that the defendant's reason for refusing transport was not meritorious. We really have two layers, I would characterize it, of deference here. We have the standard deference that a reviewing court gives to a trial judge's credibility determination on a cold record. On top of that, we have the deference that under AEDPA is required to be applied to a state court's factual determination. And here, there's nothing in the record that would justify overturning or undermining the state trial judge's finding. Did the trial judge make a credibility finding? He did make a credibility finding, yes. Or did he just say, I don't care? I mean, you had to get here one way or another. I think there's some of both of that in the trial judge's finding. I think it was the fact that by saying, I'm finding that your reason doesn't have merit, I interpret that, looking at this record, as you weren't here and I don't find that that's a reason for you not being here. Well, he had prior experience with the defendant as well. So he knew quite well what this was all about. That's right. And I think that's one of the important principles that goes into why, when we're looking at a cold record in a situation like this, that a trial judge's credibility determination is entitled to deference unless there's something there in the record that would seriously undermine that finding, which we don't have here. It appears that there must have been a history to him not showing up because he had given him this admonition the day before. That would be my assumption. I mean, yeah, the trial judge was very clear. I mean, the admission was very specific, and especially on this point about refusing transport, the court seemed to emphasize that especially. So it does appear that there must have been some history. Would you agree that in making our determination, or I shouldn't phrase it this way, but what is your position as to what he said, I'm not sure temporally when it was, to the trial judge? Thank you for revoking. I don't think I could have handled my own defense. I don't think that goes to anything like a harmlessness argument, since Ferreira, you know, would be a fundamental right. However, I think that that can have some relevance when we're reviewing the reasonableness of the State Court's decision under ADPA, and maybe even more so, bleeding into the recently certified claim, the ineffective assistance claim. I think a reasonable counsel looking at this record first can look at it and say, I don't think there's a good argument here for arguing that Ferreira was violated, especially as interpreted by Arizona law. And second, when you have the defendant essentially thanking the judge and then later on in the record essentially admitting this was going to be too difficult to do myself. So I'm glad I have counsel. The Arizona court seemed clearly to apply the wrong Strickland standard to the appellate IAC claim, because he said that the question is whether the case would have come out otherwise, and that's not the standard, right? The standard is whether there's some likelihood that it would have come out. The standard is reasonable probability.  And what they said was that the standard was whether it would have come out differently. So I would think that we would have to not do de novo the Strickland part of that claim. Does that seem right? I don't think that it is right, Your Honor. And that's because the Supreme Court has stated in ADPA cases that there's no kind of magic words requirement for state courts as long as their decision isn't an unreasonable application of or contrary to Supreme Court precedent. No. They're supposed to apply the right standard first, and they didn't. I respectfully disagree that they applied the wrong standard. I agree that they stated it inarticulately. However, they cited the applicable case law. Incorrectly. They cited the applicable case law, so I would argue that they maybe used sloppy language. Suppose I thought that. Does it matter? I.e., if I was doing this de novo, would it come out otherwise? No. I don't think that it matters here. And I think the biggest reason for that is we have a merits decision on direct appeal from the Arizona Court of Appeals addressing the Feretta issue, which Cotham raised in his pro per brief after his appellate counsel filed the Anders brief. And finding that it had no merit. And there's nothing in the record that would suggest that that original decision, that there's a reasonable probability it would have come out differently had there been a merits brief filed by counsel. So if the panel, for example, were to agree with the premise in Judge Rezan's question, one possible result would be something like even assuming there were de novo review, the petitioner still loses. That's correct, Your Honor. I think that would be the conclusion, regardless of which standard of review is applied to the ineffective assistance claim. Essentially, your position here, I think, is that Cotham's violation of procedural rules revoked his Sixth Amendment rights. How far does that go? If that's the principle that the Court applies here, that could go a long ways. I mean, what if someone doesn't stand when he objects in court? He violates a procedural rule. Does that revoke his Sixth Amendment right? Standing alone, nothing, everything else aside, I don't think it would, personally. I think here we're very clearly on safe ground, especially under an AEDPA standard. I mean, showing up is a very, arguably the most important part of following the procedural rules. If he's not there, court can't proceed. Isn't the real difference? I mean, I would be very uncomfortable also with the notion that any violation of a written-down rule somewhere, but here he was specifically told about the specific issue. So it's not really that he was violating a – I wouldn't even characterize it as violating a procedural rule. I would characterize it as violating an order, a specific order of the court, which is a different problem, it seems to me. I would agree that it was a violation of a court order, yet more so than a procedural rule. And I wouldn't get into this question about procedural rules because, you know, if somebody doesn't fill out a piece of paper, right, I think the revoke is reiterated under FREDA itself. There's no disruption. There's no – Yeah, could you call it disruptive conduct? I think – and that's another way to look at it. So I think you have – on the first level, you have a violation of the court's order that you need to be here, you can't refuse transport, which resulted in disruption. So I think it's both. All right. Thank you, counsel. Thank you. Counsel, you're out of time, but we'll give you one minute for rebuttal. Thank you. I want to address the point that the court has said, well, doesn't – isn't there some history in this case between the judge and the defendant concerning coming to court on time? That's pure speculation. There's nothing in this record that supports that. And I want to go back to my most – I don't remember this, but he didn't say anything like that at the point he said that you can't refuse transport. He didn't say anything about there being a history of it. He said it has happened before, but it's clear from the context he did not mean this case. He was talking generally. At the very least, it's ambiguous and you can't assume that's that. But let me go back to my most important argument here. There is a fundamental requirement that this court indulge in every reasonable presumption against waiver of a fundamental right. Feretta called the right to represent yourself a fundamental right. The record simply leaves too many questions for this trial judge to have done what he did. He jumped the gun. He violated that important axiom of constitutional rights. Thank you. All right. Thank you, counsel. We thank counsel for their arguments, and the case just argued is submitted.
judges: BERZON, BENNETT, Tunheim